UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WILMINGTON TRUST, NATIONAL ASSOCIATION, AS TRUSTEE FOR THE BENEFIT OF THE REGISTERED HOLDERS OF WELLS FARGO COMMERCIAL MORTGAGE TRUST 2018-C46, COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2018-C46,<br><br>Plaintiff,<br><br>-against-<br><br>EASTGATE WHITEHOUSE LLC; WILLIAM W. KOEPPEL; V.C. DRYWALL & REMODELING LLC; NEW YORK CITY ENVIRONMENTAL CONTROL BOARD; and "JOHN DOE #1" through "JOHN DOE #20," the twenty names being fictitious and unknown to the Plaintiffs, the person or parties intended being the tenants, occupants, persons or corporations, if any, having or claiming an interest in lien upon the premises,<br><br>Defendants. | Case No.<br><br><br>**COMPLAINT** |

Plaintiff Wilmington Trust, National Association, as Trustee for the Benefit of the Registered Holders of Wells Fargo Commercial Mortgage Trust 2018-C46, Commercial Mortgage Pass-Through Certificates, Series 2018-C46 ("Plaintiff"), acting by and through special servicer Argentic Services Company LP ("Special Servicer"), successor to LNR Partners, LLC, not individually but solely in its authorized capacity as special servicer pursuant to that certain Pooling and Servicing Agreement, dated as of August 1, 2018 (the "PSA"), by its attorneys, Holland & Knight LLP, as and for its Verified Complaint (the "Complaint") respectfully alleges as follows:

## NATURE OF THE ACTION

1.     Plaintiff brings this action to foreclose a Leasehold Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing and Consolidation, Modification and Restatement Agreement, dated July 23, 2018, in the original principal amount of $32,100,000.00

on that certain leasehold estate, together with the buildings, structures, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and other improvements now or hereafter located on property commonly known as and located at 939 First Avenue (a/k/a 350 East 52nd Street), New York, New York 10022, Tax Lot 30 in Tax Block 1344 on the Tax Map of New York County, as more particularly described in the Mortgage, as defined herein, (the "Mortgaged Premises"), and to recover amounts due on the related Guaranty.

### THE PARTIES

2.        Plaintiff is the trustee of a REMIC Trust and real party in interest in this action. Wilmington Trust, National Association, is a national association with its designated main office located in Wilmington, Delaware.  For diversity purposes, a national bank is a citizen of the state in which the bank's main office, as set forth in its articles of association, is located.  Therefore, for purposes of 28 U.S.C. § 1332, Plaintiff is a citizen of the State of Delaware.

3.        Upon information and belief and at all times mentioned herein, Eastgate Whitehouse LLC ("Borrower") was and is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business at c/o Morgan Urban Management, 5 East 57th Street, 10th Floor, New York, New York 10022.  As Borrower is a limited liability company, its citizenship is determined by that of its members.  Upon information and belief, Whitehouse Estates Inc., a New York corporation with its principal place of business in New York, is the sole member of Borrower.  Based on the New York citizenship of its member, Borrower is therefore a citizen of the State of New York.  Borrower is made a defendant in this action because it is an obligor under the Note (as defined below), is the ground lessee of record of the Mortgaged Premises, and is the signatory of the Mortgage, as defined herein, being foreclosed upon in this action.  A Lease entered into between First and Fifty-Second Corporation, predecessor-in-interest to 939 First Avenue LLC, as lessor, and 2249 Webster Ave. Corp.,

predecessor-in-interest to Borrower, as lessee, dated June 28, 1956, was recorded on August 2, 1956 in the Office of the City Register of the City of New York (the "Register's Office") at Liber 4972, Page 563, and covers the Mortgaged Premises (as assigned, modified, amended and/or extended, the "Ground Lease").

4.     Upon information and belief and at all times mentioned herein, William W. Koeppel ("Guarantor") is an individual residing at 333 Sunset Avenue, Apt. 609, Palm Beach, Florida 33480 and a citizen of the State of Florida.  Guarantor is made a defendant in this action because he is a signatory to the Guaranty, as defined herein, wherein he unconditionally guaranteed certain obligations of Borrower due under the Note.

5.     Upon information and belief and at all times mentioned herein, V.C. Drywall & Remodeling LLC ("VC Drywall") was and is a limited liability corporation organized and existing under the laws of the State of New Jersey, with its principal place of business located at 801 East Meadow Drive, Bound Brook, New Jersey, 08805.  As VC Drywall is a limited liability company, its citizenship is determined by that of its members.  Upon information and belief, Victor Carabajo, an individual who resides in the State of New Jersey, is the sole member of VC Drywall.  Based on the New Jersey citizenship of its member, VC Drywall is therefore a citizen of the State of New Jersey.  VC Drywall is made a defendant in this action because of claims, interests in possession, or liens it may have against the Mortgaged Premises by virtue of, among other things, that certain mechanic's lien filed on August 20, 2018, in the amount of $77,300.00, at Index No. 166 (the "Mechanic's Lien"), that certain action to foreclose the Mechanic's Lien filed in the Supreme Court of the State of New York, County of New York, captioned *V.C. Drywall & Remodeling, LLC v. 939 First Avenue, LLC, et al.*, Index No. 161453/2018 (the "Mechanic's Lien Action"), seeking, *inter alia*, foreclosure of the Mechanic's Lien, and that certain Notice of Pendency filed

on December 19, 2018 against the Mortgaged Premises in connection with the Mechanic's Lien Action.

6.      Upon information and belief and at all times mentioned herein, the New York City Environmental Control Board (the "ECB") is a city department maintaining a principal place of business located at 100 Church Street, New York, New York 10007 and a citizen of New York. The ECB is made a defendant in this action as a possible judgment creditor of Borrower as a result of that certain judgment in the original amount of $3,125.00 and stemming from ECB Violation No. 039025635H, concerning the Mortgaged Premises.

7.      Upon information and belief, "John Doe #1" through "John Doe #20" are fictitious names and unknown to the Plaintiff, and have been made defendants to this action because of possible claims or interests in possession or liens against the Mortgaged Premises.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between Plaintiff and Defendants and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

9.      Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391 because the Mortgaged Premises is located in this judicial district, at least one defendant resides in this judicial district, and a substantial part of the events or omissions giving rise to the claims in this action occurred in this judicial district.

10.      Further, venue is proper in the United States District Court for the Southern District of New York because, pursuant to Section 10.3(b) of the Loan Agreement and the Guaranty, Borrower and Guarantor consented to the jurisdiction and venue of this Court.  Specifically, Section 10.3(b) of the Loan Agreement provides in relevant part:

4

WITH RESPECT TO ANY CLAIM OR ACTION ARISING HEREUNDER OR UNDER THIS AGREEMENT, THE NOTE, OR THE OTHER LOAN DOCUMENTS, BORROWER (A) IRREVOCABLY SUBMITS TO THE NONEXCLUSIVE JURISDICTION OF THE COURTS OF THE STATE OF NEW YORK AND THE UNITED STATES DISTRICT COURT LOCATED IN THE BOROUGH OF MANHATTAN IN NEW YORK, NEW YORK, AND APPELLATE COURTS FROM ANY THEREOF, AND (B) IRREVOCABLY WAIVES ANY OBJECTION WHICH IT MAY HAVE AT ANY TIME TO THE LAYING ON VENUE OF ANY SUIT, ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT, THE NOTE OR THE OTHER LOAN DOCUMENTS BROUGHT IN ANY SUCH COURT, IRREVOCABLY WAIVES ANY CLAIM THAT ANY SUCH SUIT, ACTION OR PROCEEDING BROUGHT IN ANY SUCH COURT HAS BEEN BROUGHT IN AN INCONVENIENT FORUM. NOTHING IN THIS AGREEMENT, THE NOTE OR THE OTHER LOAN DOCUMENTS WILL BE DEEMED TO PRECLUDE LENDER FROM BRINGING AN ACTION OR PROCEEDING WITH RESPECT HERETO IN ANY OTHER JURISDICTION.

## THE LOAN AND LOAN DOCUMENTS

11.     On or about July 23, 2018, Barclays Bank PLC ("Original Lender"), at Borrower's request, loaned Borrower the principal sum of THIRTY-TWO MILLION ONE-HUNDRED THOUSAND and 00/100 DOLLARS ($32,100,000.00) (the "Loan").

12.     The Loan is evidenced by that certain Loan Agreement dated July 23, 2018 executed by and between Borrower and Original Lender (as amended and/or assigned, the "Loan Agreement"), a true and correct copy of which is annexed hereto and made a part hereof as **Exhibit A**.

13.     In connection with the Loan, Borrower executed that certain Consolidated Promissory Note dated July 23, 2018, in the principal sum of THIRTY-TWO MILLION ONE-HUNDRED THOUSAND and 00/100 DOLLARS ($32,100,000.00) (as amended and/or assigned, the "Note"), a true and correct copy of which is annexed hereto and made a part hereof as **Exhibit B**.

14.    Pursuant to that certain Note Splitter and Modification Agreement dated July 23, 2018, by and between Borrower and Original Lender (the "Note Splitter Agreement"), the Note was split and severed into two promissory notes, (i) that certain Replacement, Amended and Restated Promissory Note (Note A-1) dated July 23, 2018, evidencing Borrower's obligation to pay the principal amount of $17,000,000.00 ("Note A-1"), and (ii) that certain Replacement, Amended and Restated Promissory Note (Note A-2) dated July 23, 2018, evidencing Borrower's obligation to pay the principal amount of $15,100,000.00 ("Note A-2" and, together with Note A-1, collectively, the "Replacement Notes").  A true and correct copy of the Note Splitter Agreement is annexed hereto and made a part hereof as **Exhibit C**.  True and correct copies of Note A-1 and Note A-2 are annexed hereto and made a part hereof as **Exhibits D and E**, respectively.

15.    Repayment of the Replacement Notes is secured by, among other things, that certain Leasehold Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing and Consolidation, Modification and Restatement Agreement (as amended and/or assigned, the "Mortgage") dated as of July 23, 2018, executed by Borrower, as mortgagor, in favor of Original Lender, as mortgagee.

16.    The Mortgage, having been first duly acknowledged and the certificate of acknowledgment duly endorsed thereon, was recorded on August 10, 2018 with the Office of the City Register of the City of New York (the "City Register") as City Register File No. ("CRFN") 2018000268803.  A true and correct copy of the Mortgage is annexed hereto and made a part hereof as **Exhibit F**.

17.    The Loan is further secured by an Assignment of Leases and Rents dated as of July 23, 2018, executed by Borrower in favor of Original Lender (the "Assignment of Leases").

18.     The Assignment of Leases was duly recorded on August 10, 2018 with the City Register as CRFN 2018000268804.   A true and correct copy of the Assignment of Leases is annexed hereto and made a part hereof as **Exhibit G**.

19.     In connection with the Loan, Borrower also executed that certain Cash Management Agreement (the "Cash Management Agreement") dated as of July 23, 2018, pursuant to which, Borrower agreed, among other things, that upon the occurrence of a Triggering Event, as defined therein, Plaintiff had the right, and Borrower agreed to cooperate, to implement cash management in accordance with the Cash Management Agreement and other Loan Documents.

20.     Also in connection with the Loan, Borrower entered into that certain Deposit Account Control Agreement (the "Lockbox Agreement") dated as of July 23, 2018, by and among Borrower, Original Lender, and Wells Fargo Bank, National Association (the "Lockbox Bank").

21.     On August 10, 2018, a UCC-1 Financing Statement was filed with the City Register as CRFN 2018000268805 (the "County UCC").  A true copy of the County UCC is annexed hereto and made a part hereof as **Exhibit H**.

22.     On August 21, 2018, a UCC-1 Financing Statement was filed with the Delaware Department of State as File No. 20185771874 (the "State UCC").  A true copy of the State UCC is annexed hereto and made a part hereof as **Exhibit I**.

23.     As further security for the Loan, Guarantor executed and delivered to Original Lender that certain Guaranty of Recourse Obligations of Borrower (the "Guaranty"), dated as of July 23, 2018, guaranteeing certain of Borrower's obligations in connection with the Loan (the "Guaranteed Obligations"), a true and correct copy of which is annexed hereto and made a part hereof as **Exhibit J**.

24.     The Loan Agreement, Note, Note Splitter Agreement, Replacement Notes, Mortgage, Assignment of Leases, Cash Management Agreement, Lockbox Agreement, County UCC, State UCC, and Guaranty, together with all other documents or agreements executed and delivered in connection with the Loan are collectively referred to herein as the "Loan Documents."

## ASSIGNMENT OF LOAN DOCUMENTS TO PLAINTIFF

25.     On or about August 28, 2018, Original Lender assigned the Loan Documents, including the Note, Replacement Notes, and Mortgage, to Plaintiff.

26.     In connection with the assignment to Plaintiff, Original Lender executed and delivered to Plaintiff the following documents:

(a)     that certain Allonge to Note A-1 by Original Lender in favor of Plaintiff, which is affixed to Note A-1, and a true and correct copy of which is affixed to **Exhibit D** hereto;

(b)     that certain Allonge to Note A-2 by Original Lender in favor of Plaintiff, which is affixed to Note A-2, and a true and correct copy of which is affixed to **Exhibit E** hereto;

(c)     that certain Assignment of Mortgage, effective as of August 28, 2018, which was properly record with the City Register on October 22, 2018 as CRFN 2018000350970, a true and correct copy of which is annexed hereto and made a part hereof as **Exhibit K**;

(d)     that certain Assignment of Assignment of Leases, effective as of August 28, 2018, which was properly record with the City Register on October 22, 2018 as CRFN 2018000350971, a true and correct copy of which is annexed hereto and made a part hereof as **Exhibit L**;

(e)     that certain UCC-3 financing statement, assigning the County UCC to Plaintiff, recorded on October 22, 2018 as CRFN 2018000350972, a true and correct copy of which is annexed hereto and made a part hereof as **Exhibit M**;

(f)     that certain UCC-3 financing statement, assigning the State UCC to Plaintiff, recorded on October 22, 2018 as Amendment No. 20187307958, a true and correct copy of which is annexed hereto and made a part hereof as **Exhibit N**; and

(g)     that certain General Assignment, effective as of August 28, 2018, assigning the Loan and the Loan Documents to Plaintiff, a true and correct copy of which is annexed hereto and made a part hereof as **Exhibit O**.

27.     As of the date hereof, as a result of the transactions described above, evidenced by each of the written assignments, Plaintiff is the owner and holder of the Loan Documents, including, but not limited to, the Note, Replacement Notes, and Mortgage.

## **BORROWER'S AND GUARANTOR'S EVENTS OF DEFAULT**

### A.     **Payment Defaults**

28.     Pursuant to Section 2.2.1 of the Loan Agreement, Borrower was required to make a payment to lender of interest in the amount of the Monthly Debt Service Payment Amount, as defined therein, on the Payment Date, as defined therein, occurring in September 2018 and on each Payment Date thereafter to and including the Maturity Date, as defined therein.

29.     Pursuant to Section 8.1(a)(i) of the Loan Agreement, an Event of Default shall occur "if …any Monthly Debt Service Payment or the payment due on the Maturity Date is not paid when due under the Loan Documents[.]"

30.     Borrower failed to timely pay the Monthly Debt Service Payment Amount on the August 6, 2021 Payment Date and each Payment Date thereafter (the "Payment Defaults").

31.     Accordingly, the Payment Defaults constitute Events of Default under the Loan Documents, which exist and have existed as of the date hereof.

### B.     <u>Lockbox Defaults</u>

32.     Pursuant to Section 3.2 of the Loan Agreement, Borrower represented, warranted, and covenanted that "Borrower shall…immediately…deposit all Gross Income from Operations, all forfeited Security Deposits and all other revenue of any kind from the Property received by Borrower or Manager into the Lockbox Account[.]"

33.     Pursuant to Section 3.2 of the Loan Agreement, it is further provided that "[u]ntil deposited into the Lockbox Account, any Gross Income from Operations, forfeited Security Deposits and other revenue of any kind from the Property received by Borrower or Manager shall be deemed to be Collateral and shall be held in trust by it for the benefit, and as the property, of Lender and shall not be commingled with any other funds or Property of Borrower or Manager."

34.     Pursuant to Section 3.16 of the Loan Agreement, "Borrower acknowledges and agrees that the Accounts are subject to the sole dominion, control and discretion of Lender, its authorized agents or designees . . . and Borrower shall have no right of withdrawal with respect to any Account except with the prior written consent of Lender."

35.     Upon information and belief, Borrower has failed to deposit all revenue from the Mortgaged Premises into the Lockbox Account (the "Lockbox Defaults").

36.     As a result of the Lockbox Defaults, Borrower caused Events of Default to occur under the Loan Documents, which exist and have existed as of the date hereof.

C.      **Unauthorized Expenses Defaults**

37.     Pursuant to Section 4.1.36 of the Loan Agreement, Borrower covenants and agrees that it shall not, among other things "engage in any business or activity other than the acquisition, development, ownership, operation, leasing, managing and maintenance of the Property…acquire or own any material assets other than [] the Property…commingle its assets with the assets of any of its members, general partners, Affiliates, principals or of any other Person…incur any debt, secured or unsecured, direct or contingent (including guaranteeing any obligation), other than the Debt…[and/or] guarantee or become obligated for the debts of any other Person or hold itself out to be responsible for the debts of another Person. …"

38.     Pursuant to Section 8.1(a)(xi) of the Loan Agreement, an Event of Default shall occur "if Borrower or Principal, if applicable, violates or otherwise does not comply with any of the provisions of Section 4.1.36 hereof[.]"

39.     Upon information and belief, Borrower has been improperly using revenue and cash flow from the Mortgaged Premises to pay expenses of Borrower's Affiliate, as defined in the Loan Agreement, including such expenses as car leases and meal expenses (the "Unauthorized Expenses Defaults").

40.     As a result of the Unauthorized Expenses Defaults, Borrower caused Events of Default to occur under the Loan Documents, which exist and have existed as of the date hereof.

D.      **Bankruptcy Defaults**

41.     Pursuant to 4.1.8 of the Loan Agreement, "[n]o petition under the Bankruptcy Code or similar state bankruptcy or insolvency law has been filed against any Borrower Party in the last seven (7) years, and . . . [n]o Borrower Party is contemplating either the filing of a petition by it under the Bankruptcy Code or similar state bankruptcy or insolvency law or the liquidation of all

or a major portion of Borrower's assets or property, and Borrower has no knowledge of any Persons contemplating the filing of any such petition against it or any other Borrower Party."

42.     Pursuant to Section 8.1(a)(v) of the Loan Agreement, an Event of Default shall occur "if any representation or warranty made by Borrower, Principal, or Guarantor herein or in any other Loan Document . . . shall have been false or misleading in any material respect as of the date the representation or warranty was made[.]"

43.     Pursuant to Section 8.1(a)(vii) of the Loan Agreement, an Event of Default shall occur "if Borrower, Principal, Guarantor or such other guarantor or indemnitor shall be adjudicated a bankrupt or insolvent, or if any petition for bankruptcy, reorganization or arrangement pursuant to the Bankruptcy code, or any similar federal or State law, shall be filed by or against, consented to, or acquiesced in by, Borrower, Principal, Guarantor or such other guarantor or indemnitor, or if any proceeding for the dissolution or liquidation of Borrower, Principal, Guarantor or such other guarantor or indemnitor shall be instituted[.]"

44.     On or about June 26, 2018, prior to the closing of the Loan Documents, Guarantor filed a voluntary chapter 11 bankruptcy petition in the Southern District of New York (White Plains) (Case No. 18-22984-rdd) (the "Bankruptcy Petition"), and thereupon Borrower fraudulently and intentionally misrepresented and/or failed to disclose the Bankruptcy Petition as obligated under the Loan Documents (the "Bankruptcy Defaults").

45.     As a result of the Bankruptcy Defaults, Borrower caused Events of Default to occur under the Loan Documents, which exist and have existed as of the date hereof.

**E.     <u>Lien Defaults</u>**

46.     Pursuant to Section 5.1.2 of the Loan Agreement, "Borrower shall not suffer and shall promptly cause to be paid and discharged any Lien or charge whatsoever which may be or

become a Lien or charge against the Property, and shall promptly pay for all utility services provided to the Property."

47.     Further, pursuant to Section 5.2.1 of the Loan Agreement, "Borrower shall not create, incur, assume or suffer to exist any Lien on any portion of the Property or permit any such action to be taken, except for the Permitted Encumbrances."

48.     Pursuant to Section 8.1(a)(ix) of the Loan Agreement, an Event of Default shall occur "if Borrower violates or does not comply with any of the provisions of Sections 5.1.17 or 5.2 hereof[.]"

49.     Pursuant to Section 8.1(a)(xii) of the Loan Agreement, an Event of Default shall occur "if the Property becomes subject to any mechanic's or materialman's liens or other Lien other than a Lien for local real estate taxes and assessments [] not then due and payable and the Lien shall remain undischarged of record (by payment, bonding or otherwise) for a period of thirty (30) days[.]"

50.     Pursuant to Section 9.4(b) of the Loan Agreement and the Guaranty, Borrower and Guarantor shall be personally liable to Lender for any Losses it incurs arising out of or in connection with, among other things, "(v) Borrower's failure to pay Taxes, Other Charges (except to the extent that sums sufficient to pay such amounts have been deposited in escrow with Lender pursuant to the terms of Section 7.2 hereof), charges for labor or materials or other charges that can create a Lien on the Property."

51.     Upon information and belief, on or about August 20, 2018, VC Drywall filed the Mechanic's Lien against the Mortgaged Premises.

52.     Upon information and belief, on or about December 6, 2018, VC Drywall commenced the Mechanic's Lien Action, seeking, *inter alia*, foreclosure of the Mechanic's Lien.

53.     Upon information and belief, Borrower and Guarantor, by and through their counsel, Christopher J. Alvarado, Esq., of the Law Office of Christopher J. Alvarado, P.C., without Plaintiff's knowledge or consent, appeared in the Mechanic's Lien Action and/or submitted an answer on behalf of Plaintiff in the Mechanic's Lien Action.

54.     Upon information and belief, Borrower and Guarantor misrepresented to the court and parties in the Mechanic's Lien Action that they may act on behalf of Plaintiff in the Mechanic's Lien Action, which they have no authority to do.

55.     Borrower's and Guarantor's unauthorized actions falsely representing Plaintiff in the Mechanic's Lien Action without Plaintiff's knowledge, authorization, or consent, constitutes fraud, willful misconduct, and material misrepresentation.

56.     Upon information and belief, on or about December 2020, a lien in the amount of $3,125.00 was filed against the Mortgaged Property at ECB Violation No. 039025635H (the "ECB Lien Default, and together with the Mechanic's Lien Default, the "Lien Defaults").

57.     As a result of the Lien Defaults, Borrower caused Events of Default to occur under the Loan Documents, which exist and have existed as of the date hereof.

**F.     <u>Insurance Defaults</u>**

58.     Pursuant to Section 5.1.7 of the Loan Agreement, "Borrower shall cooperate with Lender in obtaining for Lender the benefit of any Awards or Insurance Proceeds lawfully or equitably payable in connection with the Property, and Lender shall be reimbursed for any expenses incurred in connection therewith (including attorneys' fees and disbursements, and the payment by Borrower of the expense of any appraisal on behalf of Lender in case of Casualty or Condemnation affecting the Property or any part thereof) out of such Award or Insurance Proceeds."

59.     Further, pursuant to Section 6.2 of the Loan Agreement, "[i]f the Property shall be damaged or destroyed, in whole or in part, by fire or other casualty (a 'Casualty'), Borrower shall give prompt notice of such damage to Lender and shall promptly commence and diligently prosecute the completion of the Restoration of the Property." To this extent, pursuant to Section 6.4(b)(ii) of the Loan Agreement, "[t]he Net Proceeds shall be held by Lender in an interest-bearing account and, until disbursed in accordance with the provisions of this Section 6.4(b), shall constitute additional security for the Debt and other obligations under the Loan Documents."

60.     On or about December 25, 2021, a Casualty occurred as a result of a fire on the Mortgaged Premises resulting in a portion of the Mortgaged Premises being damaged or destroyed.

61.     On or about February 22, 2022, nearly 2 months later, Borrower had advised Plaintiff of the aforementioned Casualty, and subsequently, on February 28, 2022, provided to Plaintiff certain documents relating to the Casualty, but failed to (1) disclose the extent of damage to the Mortgaged Premises, (2) provide an estimate of the cost of Restoration, and (3) provide an insurance claim amount as obligated under the Loan Documents (the "Insurance Defaults", and together with the Payment Defaults, Lockbox Defaults, Unauthorized Expenses Defaults, Bankruptcy Defaults, and Lien Defaults, collectively, the "Defaults").

62.     As a result of the Insurance Defaults, Borrower caused Events of Default to occur under the Loan Documents, which exist and have existed as of the date hereof.

**AS AND FOR A FIRST CAUSE OF ACTION**
**(Foreclosure of Mortgage)**

63.     Plaintiff incorporates herein by reference the paragraphs set forth above as if fully set forth herein.

64.     By reason of the Payment Defaults, Lockbox Defaults, Unauthorized Expenses Defaults, Bankruptcy Defaults, Lien Defaults, and Insurance Defaults, Borrower is in default under the Loan Documents.

65.     Borrower has failed to cure its defaults despite due demand in writing (the "Notice of Default") on February 18, 2022.  A true and correct copy of the Notice of Default is annexed hereto and made a part hereof as **Exhibit P**.

66.     By reason of the Defaults, the Debt has become full recourse to Borrower under the Loan Documents, pursuant to, *inter alia*, Sections 9.4(b)(i)-(iv), (vii), (xvi)-(xviii) and 9.4(c)(i)-(iv) of the Loan Agreement.

67.     Plaintiff, by reason of the Defaults, declares that the Maturity Date is accelerated and elects that the whole unpaid principal sums due on the Replacement Notes and Mortgage, together with all unpaid interest, late charges, default interest, special servicing fees, loan collections costs, legal or any other costs associated with curing the default, shall now be due.

68.     Further, by reasons of the Defaults, Plaintiff is entitled to foreclose the Mortgage.

69.     As of the date hereof, the total outstanding principal balance on the Replacement Notes is $32,100,000.00.  These amounts do not include accrued interest, late charges, default interest, special servicing fees, loan collections costs, legal or any other costs associated with curing the default.

70.     Any interest in or lien upon the Mortgaged Premises held or claimed by any defendant is subject to and junior in priority to the lien of Plaintiff's Mortgage.

71.     Pursuant to the terms of the Mortgage, the mortgagee reserves the right to pay taxes and other liens affecting the Mortgaged Premises, which liens, if any, would be and/or are superior to the lien of the Mortgage, and which, when paid by the mortgagee, together with interest thereon

as provided in said Mortgage, are to be added to the amounts due under the Mortgage.  Plaintiff may be required to pay such liens during the pendency of this action and will demand that such payments so made by it be added to the Mortgage debt as aforesaid.

72.     Pursuant to the Loan Documents, Borrower must pay Plaintiff's reasonable attorneys' fees expended to foreclose the Mortgaged Premises.

73.     Plaintiff has complied with all the terms and provisions of the Loan Documents.

74.     In order to protect its security interest in the Mortgaged Premises, Plaintiff, as it is entitled to do under the Loan Documents, may be compelled to pay, during the pendency of this action, local taxes, assessments, water rates, insurance premiums, and other charges affecting the Mortgaged Premises, and any sums thus paid by Plaintiff for such purposes, together with late payments due thereon, should be added to the sums otherwise due and deemed secured by the Mortgage and adjudged a lien.

75.     No proceeding other than this action has been commenced to recover the debt secured by the Mortgage owed to Plaintiff.

76.     Upon information and belief, each and all of the defendants herein have or claim to have some interest in, or lien upon, the Mortgaged Premises or some part thereof, which interest or lien, if any, has accrued after the lien of the Mortgage and is subordinate thereto.

77.     In the event that Plaintiff possesses any other lien(s) against said Mortgaged Premises, Plaintiff requests that such other lien(s) shall not be merged in Plaintiff's causes of action set forth in the Complaint, but that Plaintiff shall be permitted to enforce said other lien(s) and/or seek or proceeding(s), including, without limitation, any surplus money proceedings.

78.     Plaintiff shall not be deemed to have waived, altered, released or changed the election hereinafter made by reason of the payment after the date of the commencement of this

action of any or all of the defaults mentioned herein, and such election shall continue and remain effective until the costs and disbursements of this action, and any and all future defaults under the Loan Documents, and occurring prior to the discontinuance of this action, are fully paid.

79.     Plaintiff seeks to foreclose upon the Mortgage and recover the outstanding principal amount of $32,100,000.00 together with accrued interest, late charges, default interest, and any other amounts to be added pursuant to the terms of the Loan Documents, including costs and attorneys' fees and that Borrower be adjudged to pay the whole residue or so much thereof as the Court may determine to be just and equitable, of the debt remaining unsatisfied after the sale of the Mortgaged Premises and the application of the proceeds pursuant to the provisions contained in such judgment, the amount thereof to be determined by the court as provided in Section 1371 of the Real Property Action and Proceedings Law.

## SECOND CAUSE OF ACTION
### (Guaranty)

80.     Plaintiff repeats and incorporates herein the paragraphs set forth above as if fully set forth herein.

81.     In order to induce Original Lender to give the Loan and to further secure its repayment, Guarantor executed, acknowledge and delivered to Original Lender, its successors and assigns, the Guaranty.

82.     Pursuant to the Guaranty, Guarantor guaranteed certain obligations of the Borrower which consist of, *inter alia*: (i) Guaranteed Recourse Obligations of Borrower (as defined in the Guaranty) in connection with certain enumerated events (the "Recourse Liabilities"); and (ii) the entire amount owed by the Borrower under the Loan in the event of (a) any fraud, willful misconduct or material misrepresentation, (b) Borrower's breach or default under Article VII of

the Mortgage, or (c) a Bankruptcy Event occurs (as defined in the Loan Agreement) (the "Springing Recourse Events").

83.    By reason of the Defaults, the Debt has become full recourse to Guarantor under the Loan Documents, pursuant to, *inter alia*, Sections 9.4(b)(i), (iv), (vii), (xvii)-(xviii) and 9.4(c)(i)-(ii), (iv).

84.    Borrower as failed to cure its defaults despite further due demand in writing (the "Notice of Guaranty Default") on April 6, 2022.  A true and correct copy of the Notice of Guaranty Default is annexed hereto and made a part hereof as **Exhibit Q**.

85.    As such, Guarantor is liable to Plaintiff, among other things, for all Borrower's Recourse Obligations under the Loan Agreements, and all amounts due from Borrower under the Loan to the extent a Springing Recourse Event has occurred.

86.    Plaintiff has complied with all the terms and provisions of the Loan Documents.

87.    Plaintiff seeks to foreclose upon the Mortgage and recover the outstanding principal amount of $32,100,000.00 together with accrued interest, late charges, default interest, and any other amounts to be added pursuant to the terms of the Loan Documents, including costs and attorneys' fees and that Guarantor be adjudged to pay the whole residue or so much thereof as the Court may determine to be just and equitable, of the debt remaining unsatisfied after the sale of the Mortgaged Premises and the application of the proceeds pursuant to the provisions contained in such judgment, the amount thereof to be determined by the court as provided in Section 1371 of the Real Property Action and Proceedings Law.

**WHEREFORE,** Plaintiff demands judgment as follows:

a.    That all defendants, and all persons claiming under them be barred and forever foreclosed of all tight, title, lien, claim and equity of redemption in and to the Mortgaged Premises

with all of its fixtures, except for the right of the United States of America and its political divisions, to be redeemed as provided by applicable law;

     b.     That the Mortgaged Premises be sold as to obtain the greatest return of sale, whether sold jointly as a single parcel or sold separately as two or more parcels;

     c.     That the money raised from the sale of the Mortgaged Premises be paid into Court and Plaintiff be paid first (i) the principal sum of $32,100,000.00 due and owing under the Loan Documents, with interest to the time of payment; (ii) late charges; (iii) all sums, including payment of taxes and other charges, which may be expended by plaintiff to protect its security interest in the Mortgage, and (iv) reasonable costs and attorneys' fees incurred by Plaintiff in enforcing this action;

     d.     That defendants Borrower and Guarantor be adjudged liable under the Loan Documents for all amounts of the debt remaining unsatisfied after the application of the proceeds of such sale pursuant to a judgment of foreclosure in accordance with RPAPL §1371;

     e.     That defendants Borrower and Guarantor be adjudged liable under the Loan Documents for reasonable costs and attorneys' fees incurred by Plaintiff in enforcing this action;

     f.     That upon a separate application, Plaintiff shall be entitled to the appointment of a receiver of the rents and profits of the Mortgaged Premises;

     g.     That the purchaser(s) of the Mortgaged Premises at such foreclosure sale be awarded a writ of possession and all other persons in possession of the premises be evicted; and

     h.     That Plaintiff be awarded such other and further relief as the Court may deem just and proper.

Dated: New York, New York
       May 24, 2022

**HOLLAND & KNIGHT LLP**

By: _/s/ Vivian M. Arias_
       Vivian M. Arias, Esq.
       John M. Doherty, Esq.
       Baron C. Giddings, Esq.
       *Attorneys for Plaintiff Wilmington Trust,*
       *National Association, as Trustee for the Benefit*
       *of the Registered Holders of Wells Fargo*
       *Commercial Mortgage Trust 2018-C46,*
       *Commercial Mortgage Pass-Through*
       *Certificates, Series 2018-C46*
       900 Third Avenue, 20th Floor
       New York, New York 10022
       Tel: (212) 751-3001
       Fax: (212) 751-3113
       vivian.arias@hklaw.com
       jack.doherty@hklaw.com
       baron.giddings@hklaw.com

## VERIFICATION

STATE OF TEXAS           )
                                        )ss.:
COUNTY OF COLLIN       )

       DAVID DAY, being duly sworn, deposes and says:

       I am a Senior Asset Manager for Argentic Services Company LP (successor to LNR Partners, LLC), in its capacity as the Special Servicer of the Plaintiff in the within action. I have read the annexed Complaint, know the contents thereof and the same are true to my knowledge, except as to those matters which are stated to be alleged upon information and belief and as to those matters I believe them to be true. The source of my knowledge is the files and business records of Plaintiff. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on May ___, 2022.

                                     _____
                                     DAVID DAY

State of TEXAS           )
                            )ss:
County of COLLIN      )

On the _24_ day of _May_ in the year 2022 before me, the undersigned personally appeared _David Day_ , personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her capacity, and that by her signature on the instrument, the individual, or the person upon behalf of the which the individual acted, executed the instrument in the City of _Plano_ , State of Texas.



STEFANIE R. HARMON
My Notary ID # 5175856
Expires April 17, 2026